**Chris Mertens, OSB No. 092230**
Mertens Law, LLC
1040 NE 44th Avenue, Suite 4
Portland, OR 97213
Telephone: (503) 836-7673
Facsimile: (503) 206-0115
Chris@MertensCSBLaw.com

**Matthew Sutton, OSB No. 924797**
Law Office of Matthew Sutton
205 Crater Lake Avenue
Medford, OR 97504
Telephone: (541) 772-8050
ms@matthewsuttonlaw.com

Attorneys for Michael Padgett and Theresa Padgett

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON (MEDFORD)

| | |
|---|---|
| MICHAEL PADGETT and THERESA PADGETT, individuals,<br>Plaintiff,<br><br>v.<br><br>HORNECKER COWLING LLP, an Oregon Limited Liability Partnership,<br><br>Defendant. | Case No.: 1:23-cv-141-XX<br><br>COMPLAINT<br><br>Unlawful Collection Practices<br>15 U.S.C. § 1692k, et seq<br>Unlawful Trade Practices<br>ORS 646.608<br><br><br>DEMAND FOR JURY TRIAL |

## PRELIMINARY STATEMENT

1.   .

This is an action for money damages brought by a consumer pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.* and the Oregon Unlawful Trade Practices Act (UTPA), ORS 646.608, *et seq.* The FDCPA was enacted by Congress to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses. 15 U.S.C. § 1692(e).

2.

The FDCPA is a strict liability statute. *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 948 (9th Cir. 2011). Violations of the FDCPA's provisions are assessed from the perspective of the least sophisticated debtor, rather than from the perspective of the actual plaintiff. *Terran v. Kaplan*, 109 F.3d 1428, 1431 (9th Cir. 1997)(citing *Wade v. Regional Credit Ass'n*, 87 F.3d 1098, 1100 (9th Cir. 1996)). A debt collector can violate the FDCPA "regardless of whether a valid debt exists." *Baker v. G. C. Servs. Corp.*, 677 F.2d 775, 777 (9th Cir. 1982)(citing to the legislative history for the FDCPA). The FDCPA is a remedial statute and should be interpreted liberally to protect debtors from abusive debt collection practices. *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1025 (9th Cir. 2012)(citing *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1168 (9th Cir. 2006)). The FDCPA must not be to read "in a way that is antithetical to Congress's express intent

to protect consumers from abusive debt collection practices." *Hernandez v. Williams, Zinman & Parham PC*, 829 F.3d 1068, 1079 (9th Cir. 2016).

3.

The UTPA also transformed the public into "private attorneys general" by authorizing consumers who have suffered an ascertainable loss of money or property as a result of violations of the statute to sue in their own names and recover damages. Like the FDCPA, the UTPA is to be interpreted liberally in favor of consumers. *See Denson v. Ron Tonkin Gran Turismo, Inc.*, 279 Or. 85, 90 n.4, 566 P.2d 1177 (1977)(discussing legislative history of Oregon's enactment of the UTPA).

## JURISDICTION

4.

Jurisdiction is conferred on this Court pursuant to 15 U.S.C. § 1692k(d) and generally pursuant to 28 U.S.C. § 1331. The Court has pendent jurisdiction over the Unlawful Trade Practice ("UTPA") claims in this action pursuant to 28 U.S.C. § 1367(a).

5.

Personal jurisdiction over defendant Hornecker Cowling LLP (hereinafter "HC") is proper pursuant to Fed. R. Civ. P. 4(k).

6.

Venue is proper before this court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to the claim occurred within this district, Plaintiffs Michael Padgett and Theresa Padgett (hereinafter collectively,

"The Padgetts" and individually Mr. Padgett and Mrs. Padgett, respectively) reside in this district, Defendant HC's primary office and principal place of business is within this district.

## PARTIES

7.

Plaintiff Mr. Padgett is a natural person and a resident of Jackson County in the State of Oregon. Plaintiff Mrs. Padgett is a natural person and a resident of Jackson County in the State of Oregon. Plaintiffs Mr. Padgett and Mrs. Padgett (hereinafter collectively "the Padgetts" or "the Padgettses") are a married couple. The Padgetts are similarly situated as Plaintiffs in the instant matter. Unless specifically noted to the contrary, all factual allegations herein apply to both Mr. Padgett and Mrs. Padgett.

8.

The Padgetts were and at all times pertinent to the allegations made herein persons, natural persons, and consumers within the meaning of the FDCPA 15 U.S.C. § 1692a(3).

9.

At all times pertinent herein, the alleged debt (hereinafter "debt") HC attempted to collect from The Padgetts was a "debt" within the meaning of 15 U.S.C § 1692a(5), as the debt represented alleged amounts owed for goods and services provided by First Response Restoration Services, Inc., dba SERVPRO of Medford/Ashland (hereinafter "SERVPRO"). The alleged debt was incurred for

personal, family, and/or household purposes; specifically the replacement of household goods and the repair and remodeling of The Padgettses' residential home located at 1260 Looking Glass Way, Central Point, Oregon.

10.

Defendant HC is an Oregon Limited Liability Partnership organized under Oregon law, with principal place of business located at 14 North Central Avenue, Suite 104, Medford, OR 97501.

11.

Defendant HC upon information and belief, is engaged in collection of defaulted consumer debt incurred by consumers for goods and services provided for personal, family, and/or household purposes.

12.

Defendant HC regularly files garnishment documentation and lawsuits for the collection of defaulted consumer debt on behalf of GCS and engages in the regular collection of alleged debts incurred by consumers for personal, family, and/or household purposes.

13.

Upon information and belief, Charles E. Bolen (hereinafter "Bolen"), an Oregon attorney is employed by or a partner of HC who regularly files lawsuits in Oregon against Oregon consumers on behalf of client creditors, debt collectors and debt-owners . Upon information and belief, Bolen, has also issued garnishments in Oregon against Oregon consumers on behalf of client debt collectors and debt-owners. Given

an opportunity for discovery, upon information and belief The Padgetts believe that evidence will show Bolen has issued garnishments and filed legal proceedings to collect consumer debts at a rate of several per month for over the past two years.

14.

At all times relevant to the Padgett's claims asserted herein, HC acted within the ordinary scope of its business by and through one or more of its employees, agents, or partners within the course and scope of its agency or employment by creditors to collect debts owed by Oregon consumers to those creditors.

15.

Upon information and belief, HC does not have a registered agent with the Oregon Secretary of State, but has a principal place of business at 14 North Central Avenue, Suite 104, Medford, Oregon 97501.

16.

Defendant HC regularly uses instruments of interstate commerce--such as using an interstate phone system to make long distance calls, transmission of documents via facsimile transmitted over interstate phone systems, utilizing the US mails to send collections letters and legal documents; the principal purpose of which is the collection of consumer debts that were defaulted prior to HC's representation and collection efforts.

17.

Plaintiff alleges on information and belief that in the three years before this action, HC filed multiple actions each month to collect debts owed by individuals to persons other than HC.

18.

Plaintiffs further alleges on information and belief that HC has sought to collect hundreds of other debts owed by individuals to persons other than HC through collection attempts that did not involve filing a collection lawsuit.

19.

Upon information and belief, Plaintiffs alleges HC has multiple attorneys and staff whose duties include collecting debts through bankruptcy proceedings or other collection work.

20.

The Padgetts further allege on information and belief that HC earns at least 10% of its annual gross revenue from debt collection work.

21.

HC has clients from whom it has accepted debt collection work or undertaken debt collection efforts on their behalf every month for the last three years preceding the filing of this action.

22.

HC's debt collection clients include persons engaged in consumer transactions.

23.

Upon information and belief, Plaintiff alleges that HC solicits debt collection work from entities that, on a monthly or semi-monthly basis, have multiple debts that can be placed for collection with HC.

24.

At all times material, most of the debt that HC collected or attempted to collect were obligations or alleged obligations of individuals to pay money arising out of a transaction in which the money, property, insurance, or services that were the subject of the transaction were primarily for personal, family, or household purposes.

25.   .

On or about October 24, 2022, HC  admitted in a previous lawsuit against it to being a "debt collector" as the term is defined by 15 U.S.C. § 1692a(6).

26.

Upon information and belief, HC is and was a "debt collector" as the term is defined by 15 U.S.C. § 1692a(6) at all times relevant to the allegations set forth herein.

27.

At all times herein, the collection services provided by HC to SERVPRO, including those performed with respect to the goods and services sold to The Padgetts and residential restoration services provided to The Padgetts, and the attempted enforcement of the contractual obligation to pay for the same, were

governed by the ORS 646.605 et seq., the Oregon Unlawful Trade Practices Act (OUTPA). Specifically, in providing its debt collection services, HC acted within the course of its "business, vocation or occupation" as provided for under ORS 646.608(1) of the UTPA and *Daniel N. Gordon, an Or. Prof'l Corp. v. Rosenblum*, 361 Or 352, 368-369, 393 P.3d 1122 (Or. 2017).

## FACTUAL ALLEGATIONS

28.

On or about May 7, 2019 a fire in the attic space above the garage of The Padgettses' home caused damage to The Padgettses' personal and real property from burning and smoke damage. At the time of the fire, Mr. Padgett was 77 years old and Mrs. Padgett was 73 years old and a paraplegic. While The Padgetts waited outside for emergency responders to put out the fire, an agent of SERVPRO approached the Padgetts and solicited Mrs. Padgett's signature on an agreement while The Padgetts were under the impression that SERVPRO's agent was with the Fire Department or City of Central Point. SERVEPRO took advantage of the situation without full disclosure or discussion of The Padgettses' options.

29.

On or about March 9, 2021 The Padgetts wrote and mailed a letter to SERVPRO identifying that "the greater majority of the work to be done on our home . . . has been completed . . . ." The March 9, 2021 letter also identified problems with SERVPRO's services, including stolen or improperly discarded items of value, damage caused to the home, promises SERVPRO made to replace items and

perform services that were not followed through with, and services charged for that were not actually provided.

30.

Upon information and belief, SERVPRO completed the majority of its work on or around August, 2021.

31.

Upon information and belief, SERVPRO had actual knowledge, or alternatively should have known, the outstanding balance at the latest when it received the March 9, 2021 letter from The Padgetts,  and knew or should have known the cause of action existed for breach of contract and "quantum meruit" for most if not all of the debt alleged by SERVPRO.

32.

The SERVPRO contract dated May 7, 2019 provides that "**NO ACTION, REGARDLESS OF FORM, RELATING TO THE SUBJECT MATTER OF THIS CONTRACT MAY BE BROUGHT MORE THAN ONE (1) YEAR AFTER THE CLAIMING PARTY KNEW OR SHOULD HAVE KNOWN OF THE CAUSE OF ACTION.**" (emphasis in original).

33.

On or about January 29, 2021, HC mailed a letter dated January 28, 2022, demanding that The Padgetts pay the sum of $58,602.83 to HC's client, SERVPRO (hereinafter "The January 28, 2022 Letter"). Bolen, attorney at HC, signed The

January 28, 2022 Letter. On or about January 31, 2022 The Padgetts received The

January 28, 2022 letter.

34.

Upon information and belief, The January 28, 2022 Letter was HC's initial

communication with The Padgetts.

35.

The January 28, 2022 Letter did not identify HC as a debt collector for

SERVPRO.

36.

The January 28, 2022 Letter did not indicate that The Padgetts could dispute

the debt in writing.

37.

The January 28, 2022 Letter did not provide any instructions to dispute the

debt.

38.

The January 28, 2022 Letter did not identify an itemization date, nor provide

any itemization of the amount claimed to be owed on the itemization date:

$58,602.33. The January 28, 2022 Letter did not provide  an itemization of interest,

fees, payments, and credits since the itemization date, and the current amount of

the debt.

39.

The January 28, 2022 Letter did not provide the date that the debt collector

will consider the end of the validation period and the information about consumer

protections, or alternatively falsely stated the end of the validation period,

impermissibly shortening the length of the validation period.

40.

The January 28, 2022 Letter threatened to file a lawsuit against the Padgetts

even though the letter was sent more than a year after the 1-year limitation period

agreed to in the Contract and such a lawsuit would be time-barred by SERVPROs

adhesion contract with The Padgetts.

41.

 Upon information and belief, HC unfairly overstated the amount owed by The

Padgetts to SERVPRO because of offsets owed to The Padgetts due to damage caused

by SERVPRO, work falsely claimed to have been provided, and items falsely claimed

to have been purchased.

42.

Because of HC's failure to provide the necessary itemization on a valid

itemization date, HC unfairly deprived The Padgett's ability to determine their

rights to dispute the debt.

43.  .

On or about March 28, 2022, HC, on behalf of SERVPRO, filed a civil

complaint in Jackson County Circuit Court, Case Number 22CV10582 (hereinafter

"The Complaint") against The Padgetts. HC alleged  breach of contract and "quantum meruit" claims against both Mr. Padgett and Mrs. Padgett for damages in the amount of $58,602.33 plus pre- and post-judgment interest at 9% and costs and disbursements.

44.

Upon information and belief, HC failed to do its due diligence to confirm that SERVPRO knew or should have known the facts giving rise to the breach of contract claim and quantum meruit claim for over one year prior to March 28, 2022, thus rendering the claims time-barred pursuant to the contract.

45.

On or about April 19, 2022, Mr. Padgett was served by personal service with a copy of The Complaint. On or about April 27, 2022, service upon Mrs. Padgett by substitute service was completed.

46.

No itemization was provided in the complaint of the amount alleged to be owed—$58,602.33.

47.

The Padgetts were confused and upset by The January 28, 2022 Letter and by The Complaint. The Padgetts responded to the Complaint by letter dated April 222, 2022. The Padgetts asserted that it was unfair and unjust to not provide an itemization for the expenses allegedly charged and owing to SERVPRO.

48.

The Padgetts were further so confused and upset at the lack of information and unfairness of the lawsuit that they consulted with and hired an attorney, Matthew Sutton (hereinafter "Attorney Sutton"), to assist them in resolving the matter. As a result of HC's unfair actions and failure to provide legally required notices and itemizations, The Padgetts were forced to spend money in the amount of no less than $5,000 retaining Attorney Sutton to represent them against HC's collection action and to attempt to get answers to their questions about the true balance owed.

49.

On or about May 5, 2022, less than 30 days after service was completed on either of The Padgetts, HC unfairly served a notice of intent to take default in violation of Or. Rule of Civ. Proc. Rule 7 C(2).

50.

Again, on or about August 30, 2022 HC served  a notice of default unfairly claiming it could take default by September 10, 2022, when default could be taken no earlier than September 12 or 13, 2022.

51.

Yet again, on or about September 6, 2022 HC served  a notice of default unfairly claiming it could take default by in ten days, when default could be taken no earlier than September 19 or 20, 2022.

52.

As a result of HC's unfair and misleading representation that it would take actions that cannot legally be taken, The Padgetts suffered actual damages by paying Attorney Sutton to assert their rights to the full time to respond to the complaint prior to being served with a notice of intent to take default.  On several occasions, Sutton requested at the Padgett's further expense that HC dismiss or reduce SERVEPRO's claims, but HC continued to prosecute the state court collection action against the Padgetts despite HC's continued refusal to provide an itemization date and itemization of the amounts allegedly owed.

53.

HC's failure to use due diligence resulted in the filing of a the collection action that was time-barred by the terms of the SERVPRO contract, and overstated the amount owing to SERVPRO.

54.

HC's unfair misrepresentations and omissions caused actual harm to The Padgetts in the form of legal fees, filing costs, attorney fees, and postage costs.

**FIRST CLAIM FOR RELIEF: VIOLATIONS OF FDCPA—15 U.S.C. § 1962 et seq. and 12 C.F.R. § 1006 et seq. (Regulation F).**
**(AS TO BOTH Mr. Padgett and Mrs. Padgett)**

55.

The Padgetts individually restate and incorporate herein all of their statements and allegations contained in the preceding paragraphs in their entirety, as if fully rewritten.

56.

Mr. Padgett is a consumer as that term is defined by 15 U.S.C. § 1692a(3).

57.

Mrs. Padgett is a consumer as that term is defined by 15 U.S.C. § 1692a(3).

58.

HC is a debt collector as that term is defined by 15 U.S.C. § 1692a(6).

59.

HC is not exempted from the FDCPA under any of the enumerated exceptions set forth in  15 U.S.C. § 1692a(6)(F).

60.

HC violated the FDCPA by one or more of the following actions:

(a)  HC unlawfully failed to identify itself as a "debt collector" in the January 28, 2022 Letter in violation of 12 C.F.R. § 1006.18(e) and 15 U.S.C. §1692e(11);

(b)  HC failed to identify a means of dispute in writing in the January 28, 2022 Letter in violation of 12 C.F.R. § 1006.34(c) and 15 U.S.C. § 1692g;

(c)  HC failed to identify a valid itemization date in the January 28, 2022 Letter and failed to provide an itemization of the amount allegedly owing as of a valid  itemization date in violation of  12 C.F.R. §§ 1006.34(c)(1), (c)(2)(vi), (c)(2)(vii), (c)(2)(vii)  and 15 U.S.C. § 1692g;

(d)  HC failed to otherwise provide a validation notice in violation of 15 U.S.C. § 1692g(a);

(e) Upon information and belief, HC overstated and misrepresented the amount owing on the debt in violation of 15 U.S.C. §§ 1692e and 1692e(2)(A);

(f) HC disregarded the one-year limitation in the SERVPRO contract thereby overstating and misrepresenting the amount of the alleged debt in violation of 15 U.S.C. § 1692e;

(g)  HC has sought to collect amounts not allowed by law or by any agreement in violation of 15 U.S.C. § 1692f(1);

(h) HC has otherwise used unfair and unconscionable means to attempt to collect the debt in violation of 15 U.S.C. § 1692f;

(i) HC threatened to take action that could not be legally taken in violation of 15 U.S.C. § 1692e(5); and

(j) HC used false representations and deceptive means to collect a debt in violation of 15 U.S.C. § 1692e(10).

### 61.

HC continues to violate The Padgetts rights by continuing to prosecute the collection action without providing any itemization of the amounts alleged to be owed to SERVPRO as of a valid itemization date.

### 62.

As an actual and proximate result of HC's violation of the FDCPA, Mr. Padgett incurred and is entitled to  (a) actual damages in the amount of his defense costs, expense and attorney fees incurred in defending against the Complaint in state court; (b) noneconomic damages for emotional distress, worry, anxiety and

sleeplessness in an amount to be proven at trial; and (c)statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A).

63.

As an actual and proximate result of HC's violation of the FDCPA as alleged above, Mrs. Padgett incurred and is entitled to  (a) actual damages in the amount of her defense costs, expense and attorney fees incurred in defending against the Complaint in state court; (b) noneconomic damages for emotional distress, worry, anxiety and sleeplessness in an amount to be proven at trial; and (c) statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A).

64.

As an actual and proximate result of defendants' violations of the FDCPA as alleged above, Mr. Padgett is entitled to reasonable fees and costs pursuant to 15 U.S.C. § 1692k(a)(3).

65.

As an actual and proximate result of defendants' violations of the FDCPA as alleged above, Mrs. Padgett is entitled to reasonable fees and costs pursuant to 15 U.S.C. § 1692k(a)(3).

## SECOND CLAIM FOR RELIEF: VIOLATIONS OF UTPA—ORS 646.608 and 646.638.
## (AS TO BOTH Mr. Padgett and Mrs. Padgett)

66.

The Padgetts incorporate the preceding paragraphs of this complaint.

67.

In the course of their businesses as debt collectors, HC's violations of the UTPA include, but are not limited to the following:

(a) The unlawful overstatement of cost of the debt that was not owed by either Mr. Padgett nor Mrs. Padgett was a false and misleading representation of fact concerning the cost of the debt, which was rightfully nothing, or substantially less than the amount demanded in The January 28, 2022 letter and in The Complaint, in violation of ORS 646.608(1)(s);

(b) The unlawful withholding of required disclosures, itemization date, and itemization, including right to dispute the debt and request validation, caused the likelihood of confusion or of misunderstanding as to the true status and nature of the underlying debt, including the validity of the debt actually owed by The Padgetts to SERVPRO in violation of ORS 646.608(1)(b).

68.

The violations of the UTPA above alleged caused The Padgetts to suffer an ascertainable loss of money and property in the form of costs of litigation paid to respond to and defend against The Complaint, attorney fees paid for consultation, serving discovery to attempt to obtain itemization of the amounts owing, and filing an answer to respond to the overstated debt amount.  HC's violations of the UTPA caused further ascertainable loss to the Padgetts by reducing the value of the overall services provided by SERVPRO which the Padgetts did not anticipate would include being sued for the aforesaid amounts and in the manner described herein.

69.

The defendants' conduct as alleged above was willful, was in pursuit of profit, and constituted a wanton, outrageous and oppressive violation of The Padgett's right to be free from unlawful trade practices.

70.

As a result of the defendants' violation of the UTPA as alleged above, Mr. Padgett is entitled to the grater of her actual economic damages or $200, punitive damages, and reasonable fees and costs, pursuant to ORS 646.638.

71.

As a result of the defendants' violation of the UTPA as alleged above, Mrs. Padgett is entitled to the grater of her actual economic damages or $200, punitive damages, and reasonable fees and costs, pursuant to ORS 646.638.

**WHEREFORE**, Plaintiffs respectfully prays that judgment be entered against defendants Hornecker Cowling LLP, Jointly and severally, as follows:

a) A declaratory judgment that Defendant's conduct violated the FDCPA and the UTPA;

b) Actual damages including economic and noneconomic damages to Mr. Padgett determined pursuant to 15 U.S.C. §1692k(a)(1);

c) Actual damages including economic and noneconomic damages to Mrs. Padgett determined pursuant to 15 U.S.C. §1692k(a)(1);

d) Maximum statutory damages to Mr. Padgett pursuant to 15 U.S.C. §1692k(a)(2)(A);

e)  Maximum statutory damages to Mrs. Padgett pursuant to 15 U.S.C. §1692k(a)(2)(A);

f)  The greater of Mr. Padgett's economic damages or $200, pursuant to ORS 646.638(1);

g)  The greater of Mrs. Padgett's economic damages or $200, pursuant to ORS 646.638(1);

h)  Punitive damages on behalf of both Mr. Padgett and Mrs. Padgett, pursuant to ORS 646.638(1);

i)  for an award of costs of litigation and reasonable attorney fees incurred by Mr. Padgett in prosecuting this case, pursuant to 15 U.S.C. § 1692k(a)(3) and ORS 646.638(3);

j)  for an award of costs of litigation and reasonable attorney fees incurred by Mrs. Padgett in prosecuting this case, pursuant to 15 U.S.C. § 1692k(a)(3) and ORS 646.638(3); and

k)  For all such further relief that the Court may deem just and appropriate.

//

//

//

//

//

//

//

## **JURY DEMAND**

Mr. Padgett and Mrs. Padgett are entitled to and hereby respectfully demands a trial by jury.


Dated this 27th day of January, 2023.

**Mertens Law, LLC**

/s/ Chris Mertens
Chris Mertens, OSB #092230
Mertens Law, LLC
4411 NE Tillamook Street
Portland, Oregon 97213
Tel: 503.836.7673
Fax: 503.213.6000
Chris@MertensCSBLaw.com

Of Attorneys for the Plaintiff